UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                    **SOUTHERN DIVISION AT LONDON**

ROBERT EARL NOBLE,            )
                              )
     Plaintiff,                ) Action No. 6:16-CV-00177-JMH
                              )
v.                            )
                              ) **MEMORANDUM OPINION AND ORDER**
NANCY A. BERRYHILL,           )
Acting Commissioner of        )
Social Security               )
                              )
     Defendant.               )

                    **   **   **   **   **

This matter is before the Court on the parties' cross-Motions for Summary Judgment (DE 7, 9; *see also* Reply at DE 10-2)[1] on Plaintiff's appeal of the Commissioner's denial of his application for disability insurance benefits.[2] The matter having been fully briefed by the parties is now ripe for this Court's review.

**I.**

In determining whether an individual is disabled, an Administrative Law Judge ("ALJ") uses a five step analysis:

> 1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.
>
> 2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental

---

[1] Plaintiff's Motion for Leave to File a Reply Memorandum in Support of his Motion for Summary Judgment [DE 10], which is unopposed, shall be granted.
[2] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520(1982)).

## II.

In December 2013, Plaintiff filed applications for supplemental security income (SSI) and disability insurance benefits (DIB) (Tr. 148-49, 285-93). After a hearing on August 28, 2015 (Tr. 342-60), an ALJ denied Plaintiff's claims on September 24, 2015 (Tr. 15-25), and the Appeals Council then declined Plaintiff's request for review (Tr. 8-11), making the ALJ's September 2015 decision the final agency decision for purposes of

2

judicial review. 20 C.F.R. § 404.981, 422.210(a). This appeal followed.

Plaintiff previously received a closed period of disability from April 23, 2007, to June 15, 2008 (Tr. 26-38). Thereafter, he returned to work as a concrete truck driver (Tr. 38). In his current application, Plaintiff alleged he became unable to work in June 2011, due to neck and back injuries and mental problems (Tr. 162). He later amended his alleged onset date to June 30, 2014 (Tr. 345-46). Plaintiff was 49 years old on that date, and 50 years old at the time of the ALJ's September 2015 final decision, that is now before the Court (Tr. 148). Plaintiff has a high school education and worked in the vocationally relevant past as a truck driver (Tr. 163, 357).

Plaintiff had a long history of treatment for neck and back issues, including neck surgery in 2005 (Tr. 224, 272). In questionnaires completed in connection with his disability application, Plaintiff reported that he did not perform any house or yard work (Tr. 182), and he did not drive because he did not feel safe about driving (Tr. 188).

After he filed his current applications, the Commissioner sent Plaintiff for a consultative examination with Morgan Eckerd, M.D., in January 2014 (Tr. 224-30). Plaintiff complained of constant low back pain, but said he could lift 15 to 20 pounds once and 10 pounds repetitively, walk and stand for 30 minutes at

3

a time, and sit for an hour at a time. Plaintiff also said he could perform his own personal hygiene, drive short distances, and manage money (Tr. 224). On examination, Plaintiff had no muscle asymmetry, atrophy, involuntary movements, structural deformity, or swelling. He had normal gait and station with adequate fine motor movements, dexterity, and ability to grasp objects with both hands (Tr. 226). Plaintiff also had normal reflexes and intact sensation. Dr. Eckerd assessed anxiety, depression, and chronic pain. He opined that Plaintiff could sit, walk, and/or stand for a full workday; lift/carry objects with moderate limitations regarding lifting and carrying heavy objects; respond appropriately to questions; and carry out and remember instructions (Tr. 227).

During the administrative proceedings in early 2014, Rebecca Luking, D.O., a state agency physician, reviewed Plaintiff's record and assessed limitations consistent with medium work (Tr. 326-27).

In February 2014, Plaintiff saw James Chaney, D.O., and asked for a referral to pain management for his low back pain (Tr. 238). On examination, Plaintiff was well appearing in no distress with normal mood and affect (Tr. 239). Dr. Chaney assessed low back pain and anxiety/depression and adjusted his medications (Tr. 240). In March and April 2014, Dr. Chaney repeated these findings and found Plaintiff had no focal neurological deficits and normal gait (Tr. 232, 235-36).

A year later, in April 2015, Plaintiff saw Daniel R. Curran, M.D., to establish care as a new patient. Dr. Curran noted that imaging studies showed spondylosis and spondylolisthesis of the low back with a disc bulge. Plaintiff complained of chronic neck and back pain, and asked for a surgical referral (Tr. 266). Dr. Curran found that Plaintiff walked with a shortened gait but had full (5/5) strength and normal reflexes. In early June 2015, Plaintiff reported that his medications eased his pain and helped him function with day-to-day activities. Plaintiff had tenderness and decreased range of motion in his low back, but Dr. Curran did not record any other abnormalities (Tr. 264). Later that month, Plaintiff returned to Dr. Curran complaining of a sudden worsening of his back pain after mowing his grass on a riding mower (Tr. 262). Dr. Curran prescribed medications and referred Plaintiff to a surgeon (Tr. 263).

When surgeon John J. Vaughan, M.D., evaluated Plaintiff in early July 2015, he noted he had seen Plaintiff several years earlier to discuss surgical options, which Plaintiff had then declined, but he was now ready to have surgery (Tr. 269). Dr. Vaughan thought Plaintiff was a candidate for surgery (Tr. 276), and performed a laminectomy and fusion on July 22, 2015 (Tr. 272-74).

At the administrative hearing on August 28, 2015, Plaintiff testified that after he returned to work as a concrete truck driver

5

in 2008, he worked until 2012, at which point, his back began troubling him again (Tr. 355). He noted that he had back surgery a few weeks before the hearing and had just started driving a car again (Tr. 348). Plaintiff estimated he could walk about two hundred yards at a time, stand 10 to 15 minutes at a time, and sit 10 to 15 minutes at a time (Tr. 350-51). He noted that after the surgery, the doctor had placed restrictions on him of no lifting over 15 pounds (Tr. 355-56). Plaintiff reported that he took pain medication three times a day, which eased the pain "but not all the way" (Tr. 351).

A vocational expert also testified at the August 2015 administrative hearing (Tr. 357-59). The ALJ asked the vocational expert to assume a hypothetical individual of Plaintiff's age, education, and work experience with limitations the same as those ultimately determined by the ALJ to be those of the Plaintiff (Tr. 357-58). The vocational expert testified that such an individual could not perform Plaintiff's past relevant work but could perform the representative light unskilled jobs of general clerk, cashier/counter clerk, and machine tender (Tr. 358).

After a careful review of the record, the ALJ found in his September 2015 decision that Plaintiff had the severe impairments of lumbar spondylosis, status post L5-S1 laminectomy and fusion; and degenerative disc/joint disease in the cervical spine with history of cervical spine surgery (Tr. 20). The ALJ found that

Plaintiff's impairments, singly or in combination, did not meet or equal the severity of a listed impairment (Tr. 21). He found that Plaintiff had the residual functional capacity to do light work that did not require more than frequent stooping, kneeling, crouching, crawling, or climbing ladders and ropes (Tr. 21). Based on the vocational expert's testimony, the ALJ concluded that Plaintiff could not perform any past relevant work, but could perform other unskilled light jobs in the national economy. Thus, the ALJ found that Plaintiff was not disabled (Tr. 25).

In his request for review of the ALJ's decision to the Appeals Council, Plaintiff submitted a form from Dr. Vaughan dated October 7, 2015, in which he opined that, since Plaintiff's surgery in July 2015, he was limited to sedentary work with standing, walking, and sitting for one to two hours at a time. He also stated that Plaintiff's impairments or treatment would cause him to be absent from work more than four days per month (Tr. 340). The Appeals Council considered this evidence, but found that it did not provide a basis for changing the ALJ's decision (Tr. 8-12).

## III.

When reviewing a decision made by the ALJ, the Court may not "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). "The ALJ's findings are conclusive as long

7

as they are supported by substantial evidence." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted). Substantial evidence "'means such relevant evidence as a reasonable mind might accept.'" *Foster*, 279 F.3d at 353 (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1991)).

**IV.**

The case before the Court today presents an unusual but easily answered question about the evidence before the ALJ at the time of his decision in this matter. Plaintiff argues that the ALJ seemed mentally "lost" and that the decision of the ALJ makes no sense whatsoever because the ALJ did not seem to understand that Plaintiff had not had time, on the day of his hearing, to recover from his back surgery which took place five weeks prior. He suggests that the ALJ should have known that he would be more severely limited from the period of the surgery through an additional period from that time, perhaps meeting the duration requirement for an impairment to qualify one for disability benefits. *See* 20 C.F.R. § 404.1509 (impairment "must have lasted or must be expected to last for a continuous period of at least 12-months"). He asks the Court to determine that the ALJ's decision was not supported by substantial evidence because it failed to account for the fact that his course of treatment ended in surgery

8

and that he was in surgical recovery at the time the hearing was held.

There is little analysis required to conclude that the ALJ's decision should be affirmed. While it might seem at first blush to fly in the face of common sense with an immediately post-surgical patient in the hearing room before the ALJ, the law is clear, and Plaintiff fails to appreciate the absence of evidence before the ALJ and the requirement of substantial evidence to support any conclusion under the Social Security Act. He asks this Court to look at evidence post-dating the hearing and the decision of the ALJ to afford him relief. (*See* Tr. 340 (opinion of Dr. Vaughan dated October 7, 2015 for restrictions in effect since July 22, 2015)). The Court declines to do so.

Even though the case at bar is distinguishable in many ways from *Perkins v. Apfel*, 14 F. App'x 593, 600 (6th Cir. 2001), in which the court concluded that a medical opinion offered after an ALJ's decision was not material where the doctor did not attempt to relate his opinion back to the period prior to the ALJ's decision, the case is still instructive. Certainly, Dr. Vaughan attempts to relate his opinion back to the period prior to the ALJ's decision, but even if the Court accepted that, his opinion would not provide evidence of a twelve month period of limitations. Dr. Vaughan opines that Plaintiffs' more severe limitations began with his surgery, but he does not opine how long the limitations will last. For this

9

reason, it is simply not material.  Maybe this is why Plaintiff has not requested nor is this case appropriate for sentence 6 relief under 42 U.S.C. § 405(g).[3]

Plaintiff's suggestion that the ALJ was "mentally lost" is not only rude but unsupported by the administrative record before the Court. The ALJ did reference Plaintiff's post-surgical situation, in footnote 6 of his decision (Tr. at 24), where the he wrote that "Exhibit B9F, e.g., does not identify any enduring restrictions levied by the claimant's treating orthopedic surgeon, and no evidence of further orthopedic follow-up is of record."  In other words, the fact that Plaintiff had surgery and had not had time to recovery from surgery did not elude the ALJ.  Further, the ALJ correctly identified that there was no post-surgical orthopedic notes in the record at the time of the hearing.  There could not have been for, as Plaintiff explains, he had not had his post-operative appointment at the time of the hearing.  Dr. Vaughan's assessment of his limitations did not exist for several more months.

Plaintiff argues, without support, that the ALJ should have known that the post-operative period would resulted in a period of

---

[3] "The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."

disabling limitation with a likely duration of twelve months, but that would require the ALJ to be clairvoyant, which the Social Security Act does not demand and, in fact, warns against.[4] Without evidence in front of him – one way or the other – the Court cannot fault the ALJ at all. Ultimately, he asks the Court to conclude that the ALJ erred because, at the end of the durational period for which he sought relief, his condition worsened substantially, whether as a matter of the progression of his condition or as a temporary result of his surgery to correct his condition. That is no ground for relief.

Accordingly, for all of the reasons set forth above, **IT IS ORDERED**:

1) That Plaintiff's Motion for Leave to File a Reply Memorandum in Support of his Motion for Summary Judgment [DE 10] is **GRANTED** and the Clerk shall file the tendered Reply in the record of this matter.

---

[4] Plaintiff insists that the onus was on the ALJ to transform this case into an "insufficient duration" case by stating a denial based on that rationale in light of SSR 82-52, Duration of the Impairment ("When the application is being adjudicated (or a hearing decision is being issued) before the impairment has lasted 12 months, the nature of the impairment, the therapeutic history, and the prescribed treatment will serve as the basis for determining whether the impairment is expected to result in death or will continue to prevent the individual from engaging in any SGA (or any gainful activity) for the additional number of months needed to make up the required 12 months duration (e.g., 7 months for the claim being adjudicated in the 5th month, etc.)."). *See* 1982 WL 31376. However, in light of the fact that there was already a period of twelve months in which Plaintiff averred disability before the ALJ and because there was no request a delay or prognosticate in the absence of evidence to allow Plaintiff to adduce further evidence to support his conclusion about the duration of the post-surgical disability changes. In other words, the onus was on Plaintiff, and he failed to act as necessary to secure that relief.

2) that Plaintiff's Motion for Summary Judgment (DE 7) is **DENIED;** and

3) that Defendant's Motion for Summary Judgment (DE 9) is **GRANTED.**

This the 29th day of September, 2017.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge